**Warren D. RUSH, Individually and on Behalf of Rush, Rush, and Calogero, Appellant,**

v.

**Melvin BARRIOS, Katharine Barrios, Aaron W. Guidry, Porter, Denton & Kobetz, A.P.L.C. and Mallia & Jacobs, Appellees.**

No. 14–98–01160–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 14, 2001.

Rehearing Overruled Aug. 23, 2001.

Robert Lee Galloway, Paul F. Waldner, Houston, for appellant.

Arnold Anderson Vickery, Michael P. Mallia, Houston, for appellees.

Panel consists of Justices CANNON, DRAUGHN, and LEE.*

## OPINION

DRAUGHN, Justice (Assigned).

This is an appeal from a dispute over legal fees between appellant, Warren D. Rush (individually and on behalf of the law firm Rush, Rush & Calogero) (Rush) and appellees, Melvin and Katharine Barrios, Aaron W. Guidry (an attorney at Porter, Denton & Kobetz, A.P.L.C.) (Guidry), Porter, Denton & Kobetz, A.P.L.C., and Mallia & Jacobs. Rush appeals in three points of error, contending that the trial court erred: (1) in granting judgment notwithstanding the verdict; (2) in granting summary judgment that Rush's retainer contract had been terminated for cause; and, depending on our determination of the first two points, (3) in exercising personal jurisdiction over him. We affirm.

## BACKGROUND

Melvin Barrios purchased metal roofing material from Central Steel Erectors, Inc., a Louisiana Corporation (Central), that was manufactured by Whirlwind Steel Buildings, Inc., a Texas corporation (Whirlwind) The metal roofing became extremely slippery when wet, and carried no warnings to this effect. On May 31, 1992, Barrios was installing the metal roofing material on his home in Lafayette, Louisiana, when it started raining. The slippery condition caused Barrios to slip and fall off the roof and break his neck. As a result of this accident, Melvin Barrios is a quadriplegic. Although originally hospitalized in Louisiana, Barrios transferred to the Texas Institute for Rehabilitation and Re-

search (TIRR) in Houston, Texas, for a three-month stay. His employer, Knight Oil Tools, originally advised him that the hospital charges at TIRR would be covered under Knight's ERISA plan. However, eighty days into his treatment at TIRR, the insurance company for the ERISA plan told him that only 30–days' coverage existed under the ERISA plan with Knight Oil Tools. Barrios was left with $11,000 in bills.

Upset, Barrios called his boss, Mike Hamza, who told him not to worry because he would correct the situation. Meanwhile, Barrios had been in contact with Rush, an attorney, who also represented Knight Oil Tools on corporate matters. Rush tried to negotiate an increase in coverage or a decrease in the medical bills in conjunction with Mike Hamza at Knight Oil Tools. Rush and Hamza were unsuccessful in their attempts to increase coverage. Barrios did not like the way Rush was handling his ERISA claim. On May 28, 1993, Barrios entered into a contingency fee contract with Rush whereby Rush was to represent Barrios on his suit against Central and Whirlwind. Rush filed two lawsuits in Louisiana courts to prevent the Louisiana one-year statute of limitations (called "prescription" in Louisiana) from running on his products liability claims. Rush never filed suit on Barrios's ERISA claim.

Barrios retained Guidry on May 28, 1993, to represent him in connection with the ERISA claim. In January or February 1994, Barrios talked to Guidry about his products suit. Guidry agreed to investigate the matter for him but did not represent him at that time. Guidry wrote a letter to Barrios dated March 18, 1994, indicating that he could not represent Barrios on the products claim because the

---

* Senior Justices Bill Cannon, Joe L. Draughn, and Norman Lee sitting by assignment.

Texas attorneys stated they could not send the 60–day notice to Central and Whirlwind required by the Texas Deceptive Trades and Practices Act. Thereafter, Guidry changed his mind, and Barrios signed a contingency fee contract with Guidry and his firm on the products case. Guidry made an oral referral of the contingency fee contract to Mallia, a Texas attorney, whereby they agreed to a 50/50 fee split of the contingency fee. Guidry wrote a letter for Barrios dated May 3, 1994, discharging Rush.

Mallia filed Barrios's products liability suit against Whirlwind and Central in Texas and settled with them for two million dollars in October 1996. In November 1996, Mallia filed a declaratory judgment action against Rush, Guidry, and their respective law firms, to apportion among all the attorneys the $666,666.67 attorneys' fees received as the one-third contingency fee due from Barrios's settlement with Whirlwind and Central. The jury awarded Rush $111,111.11 as his fee for services to Barrios, and they awarded $555,555.55 to Mallia, Mallia & Jacobs, Aaron Guidry, and Porter, Denton & Kobetz, for their services to Barrios. Because Rush had been terminated for cause by Barrios, the trial court reduced his total award to $33,333.33 as a forfeiture under Texas law. The trial court entered judgment *non obstante veredicto* (JNOV) for Rush in this amount, then further reduced this award by ten percent, according to Louisiana law, making Rush's total award $29,999.99.

## JUDGMENT NON OBSTANTE VEREDICTO

In his first point of error, Rush contends that the trial court erred in granting judgment non obstante veredicto (JNOV), which reduced the jury's award of $111,111.11 in attorneys' fees to $29,999.99. The pertinent part of the judgment reads:

"The [appellees] moved for fee forfeiture and [Rush] moved for Judgment on the verdict. The Court rendered Judgment Non Obstante Veredicto in the amount of Thirty–Three Thousand, Three Hundred Thirty–Three and 33/11 ($33,333.33) Dollars and the Court further reduced the award by ten (10%) percent, pursuant to Louisiana law."

■ First, Rush claims that the court impermissibly granted JNOV *sua sponte.* A trial judge may only grant a JNOV upon motion by a party. *See* TEX.R. CIV. P. 301. The appellees claim that they filed a "Brief in Support of Fee Forfeiture" that, while not properly titled, had the same intent and effect as a motion for JNOV. "It is well settled that in determining the nature of a pleading, we look to the substance of the plea for relief, not merely the form of title given to it." *See* TEX.R. CIV. P. 71; *Nguyen v. Kim,* 3 S.W.3d 146, 150 (Tex. App.—Houston [14th Dist.] 1999, no writ); *State Bar of Tex. v. Heard,* 603 S.W.2d 829, 833 (Tex.1980). "Its substance is determined by what effect it will have on the proceeding if granted." *University of Houston v. Elthon,* 9 S.W.3d 351, 355 (Tex. App.—Houston [14th Dist.] 1999, pet. dism'd w.o.j.). Here, it is clear that appellees sought relief in opposition to the jury's award of $111,111.11 in attorney's fees to Rush. They filed their brief after the jury returned its verdict, seeking fee forfeiture under *Arce v. Burrow,* 958 S.W.2d 239 (Tex.App.—Houston [14th Dist.] 1997), *affirmed as modified, Burrow v. Arce,* 997 S.W.2d 229 (Tex.1999) and, alternatively, *quantum meruit* under Louisiana law. *See O'Rourke v. Cairns,* 683 So.2d 697, 703 (La.1996). The appellees urged the trial court to ignore the jury's award of attorney's fees and to reduce that amount to zero as a consequence of Rush's termination for cause. Although appellees sought total forfeiture of the fee, they

correctly noted in their brief that the amount of the fee to be forfeited must be determined by the court. *See Burrow,* 997 S.W.2d at 245.[1] Under Louisiana law, they urged that *quantum meruit* for Rush would be based on a reasonable hourly rate; to allow the jury's award would be unjust because there was "no evidence of any tangible benefit received by Mr. and Mrs. Barrios from any work done by [Rush]."

Rush nonetheless argues that appellees' pleading "nowhere resembles a request for JNOV, which can be granted only if no evidence supports the jury's verdict." We disagree. The appellees' pleading sufficiently recites that no evidence supports the value assigned by the jury to the few actions taken by Rush on Barrios's case. Further, "no evidence" exists when a court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact. *See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990). In *Burrow,* the Texas Supreme Court stated that fee forfeiture was an equitable remedy, and "a trial court must determine from the parties whether factual disputes exist that must be decided by a jury before the court can determine whether a clear and serious violation of duty has occurred, whether forfeiture is appropriate, and if so, whether all or only part of the attorney's fee should be forfeited." *Burrow,* 997 S.W.2d at 246. Thus, if fee forfeiture is appropriate, the trial court is authorized by law to give no weight to the evidence of the value of the attorney's legal services. Because the legal issue of fee forfeiture permits the trial court to disregard the jury's verdict on attorney's fees, appellees' pleading ful-

fills the requisites of a motion JNOV. Accordingly, we hold that the nature of appellees' pleading suffices as a motion for JNOV. We overrule Rush's contention under issue one that the trial court erroneously acted *sua sponte* in entering JNOV.

■ Second, Rush argues that the jury's verdict was supported by the law and the evidence. The standard of review for a JNOV is the same as a directed verdict. *See Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671 (Tex.1990). We will affirm a JNOV if there is no evidence to support an issue, or conversely, the evidence establishes an issue as a matter of law. *See Exxon Corp. v. Quinn,* 726 S.W.2d 17, 19 (Tex.1987). "No evidence" exists, and a judgment notwithstanding the verdict should be entered, when the record discloses one of the following: (1) a complete absence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 666 n. 9 (Tex.1990). To determine whether there is any evidence, we must review the record in the light most favorable to the verdict, considering only the evidence and inferences that support the verdict and rejecting the evidence and inferences contrary to the verdict. *See Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). When there is more than a scintilla of competent evidence to support the jury's findings, the judgment notwithstanding the verdict should be re-

---

1. Rush urges that because appellees first raised the issue of fee forfeiture in a cross-claim, the Brief in Support of Forfeiture cannot be considered a motion for JNOV. He cites no authority that a legal theory ex-

pressed as a cross-claim cannot also be raised as a motion for JNOV if its effect is to reduce or disregard the jury's verdict. We thus disagree with Rush's argument.

versed. *See id.* at 228; *Holeman v. Landmark Chevrolet Corp.*, 989 S.W.2d 395, 402 (Tex.App.—Houston [14th Dist.] 1999, pet. denied).

■ In cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. *See O'Rourke*, 683 So.2d at 704; *Saucier v. Hayes Dairy Prod., Inc.*, 373 So.2d 102, 116 (La.1979). In this case, the total fee was $666,666.66. Second, the trial court must allocate the fee between discharged and subsequent counsel based on eight factors known as the *Saucier* factors. *O'Rourke*, 683 So.2d at 704. The *Saucier* factors are:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

*Saucier*, 373 So.2d at 116.

In this case, the trial judge submitted these factors to the jury because the facts were disputed. The jury found that $111,111.11 was a reasonable fee for the work of Warren D. Rush, David Calogero and Rush, Rush & Calogero considering the eight *Saucier* factors. They found that $555,555.55 was a reasonable fee for Michael P. Mallia, Mallia & Jacobs, Aaron Guidry, and Porter, Denton & Kobetz for their legal services considering the eight *Saucier* factors.

■ Under the *O'Rourke* case, followed by the trial court in this case, the only remaining function was: "the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion counsel otherwise would receive after the *Saucier* allocation." *O'Rourke*, 683 So.2d at 703. In this case, the trial court previously entered partial summary judgment holding that Mr. Rush had been dismissed for cause by Mr. Barrios. After the jury entered its verdict, appellees filed a motion for a fee forfeiture because Mr. Rush was discharged for cause. In their motion, appellees cited the *Arce v. Burrow*, 958 S.W.2d at 246 as controlling.

■ Both parties cite docket entries made by the trial court as evidence of the court's findings with respect to the hearing on the motion to forfeit. An appellate court may not consider docket entries since they are only made for the clerk's convenience and are usually unreliable. *State Farm Fire & Cas. Co. v. Reed*, 826 S.W.2d 659, 661 (Tex.App.—Houston [14th Dist.] 1992), *aff'd*, 873 S.W.2d 698 (Tex. 1993). There are only certain situations where docket entries may be considered and none of those situations exist in the present case. *See Escobar v. Escobar*, 711 S.W.2d 230, 232 (Tex.1986) (to determine whether court had authority to correct judgment by nunc pro tunc); *Buffalo Bag Co. v. Joachim*, 704 S.W.2d 482, 484 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd

n.r.e.) (to determine if motion for new trial lost by clerk was filed or not); *Pruet v. Coastal States Trading, Inc.,* 715 S.W.2d 702, 705 (Tex.App.—Houston [1st Dist.] 1986, no writ) (to determine clerical error in nunc pro tunc proceeding). We find it especially inappropriate to consider the notes in the docket in this case because it would be reviewing them as if they were findings of fact and conclusions of law, which are not filed in this case. Accordingly, we do not accept the trial court's docket entries as findings of fact and conclusions of law upon which the court based its final judgment.

The judgment of the trial court recites, in pertinent part:

> The Plaintiffs and Counter Defendants moved for fee forfeiture and the Defendant and Counter–Plaintiff moved for Judgment on the verdict. The Court rendered Judgment Non Obstante Veredicto in the amount of . . . $33,333.33 . . . and the Court further reduced the award by ten (10%) percent, pursuant to Louisiana law.

▮ Appellants contend there is ample evidence to support the jury's verdict and the trial court erred in entering JNOV finding no evidence. Evidence to support the jury's award of $111,111.11 is not the issue. The trial court accepted the jury's verdict, but reduced the total award to $33,333.33 as a fee forfeiture, then further reduced that award by 10% under "Louisiana law." Appellants did not request findings of fact nor conclusions of law as to why the trial court reduced the verdict, and we cannot use docket entries to review their complaint. No record was made of the hearing on the motion for fee forfeiture, and we must support the judgment of the trial court on any legal theory applicable to the case. *Vickery v. Commission for Lawyer Discipline,* 5 S.W.3d 241, 251–252 (Tex.App.—Houston (14

Dist.) 1999, pet. denied). The presumption of validity still operates to resolve all other ambiguities in favor of the judgment. *Id.* Accordingly, if the trial court files no findings of fact and conclusions of law, all findings necessary to the court's judgment, if supported by the record, will be implied. *See North East Tex. Motor Lines v. Dickson,* 148 Tex. 35, 219 S.W.2d 795, 796 (1949); *Vickery,* 5 S.W.3d at 251–252. In such cases, the judgment will be affirmed if it may be upheld on any basis that has support in the evidence under any theory of law applicable to the case. *Vickery,* 5 S.W.3d at 251–252.

▮ The presumption of validity is only prima facie, of course, and may be rebutted. *Id.* However, because the presumption is always in favor of the validity of the judgment, the burden of demonstrating error rests upon the appellant. *Id.* Accordingly, an important predicate for a successful appeal is to establish what facts were found by the trial court. *Id.* To limit the scope of the presumption, it is advantageous to the appellant to narrow the issues on appeal by requesting findings of fact and conclusions of law. *Id.* These written findings are equivalent to a jury verdict on special issues and permit the parties, as well as the reviewing court, to ascertain the true basis for the trial court's decision. *Id.*

Appellees' motion for fee forfeiture contained a valid legal theory by which the court could reduce the jury award as a matter of law. *Burrow,* 997 S.W.2d at 246. "Once any necessary factual disputes have been resolved, the court must determine, based on the factors we have set out, whether the attorney's conduct was a clear and serious breach of duty to his client and whether any of the attorney's compensation should be forfeited, and if so, what amount." *Id.*

■ "Forfeiture of an agent's compensation ... is an equitable remedy similar to a constructive trust." *Id.* Because fee forfeiture is a remedy, such proceedings are governed by the laws of Texas. *State of California v. Copus,* 158 Tex. 196, 309 S.W.2d 227, 230 (1958); *Hill v. Perel,* 923 S.W.2d 636, 639 (Tex.App.—Houston [1st Dist.] 1995, no pet.). Questions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained. *Id.*

■ We find that the trial court acted correctly in reducing the jury's fee finding either under the remedy of fee forfeiture law in Texas or under the holding in *O'Rourke.* By failing to make a record of the hearing on appellees motion for forfeiture of fees, and by failing to obtain findings of fact and conclusions of law concerning the trial court's determination that fee reduction was appropriate, appellants have not met their burden of demonstrating error. Their complaint consists of conclusory argument only supported by docket entries that this court cannot consider. Appellants have not overcome the presumption that is always in favor of the validity of the judgment. We overrule appellants contentions in their first issue arguing that the trial court erred in granting JNOV.

## THE SUMMARY JUDGMENT

In issue two, appellants contend the trial court erred in ruling that Rush was terminated for cause because: (1) no summary judgment evidence established a conflict of interest as a matter of law; (2) a material fact issue existed as to whether Barrios waived any conflict of interest; (3) appellees' summary judgment evidence relating to Barrios's benefit plan was untimely filed; and (4) the summary judgment evidence raised a material fact issue regarding the cause for Rush's discharge.

## Standard of Review

The standard we follow when reviewing a summary judgment is well established. Summary judgment is proper only when the movant establishes there are no genuine issues of material fact and proves he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c).

■ For plaintiff to be entitled to summary judgment when defendant has asserted a counterclaim, plaintiff must prove, as a matter of law, each element of its cause of action and disprove at least one element of defendant's counterclaim. TEX.R. CIV. P. 166a(a); *Taylor v. GWR Operating Co.,* 820 S.W.2d 908, 910 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (discussing summary judgment on counterclaims). Every reasonable inference from the evidence will be resolved in favor of the nonmovant. *Clark v. Pruett,* 820 S.W.2d 903, 905 (Tex.App.—Houston [1st Dist.] 1991, no writ). When a nonmovant fails to file a response, the only issue that party may raise on appeal is that the movant failed to carry its burden of proof. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex. 1979).

■ Our review is limited to the issues presented to the trial court in the motion for summary judgment, as the judgment may be affirmed only on grounds presented in the motion. TEX.R. CIV. P. 166a(c); *Clear Creek Basin Auth.,* 589 S.W.2d at 676; *Dickey v. Jansen,* 731 S.W.2d 581, 583 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *see also Schafer v. Federal Serv. Corp.,* 875 S.W.2d 455, 456 (Tex. App.—Houston [1st Dist.] 1994, no writ).

■ Courts of appeals should consider all summary judgment grounds the trial

court rules on and the movant preserves for appellate review that are necessary for final disposition of the appeal when reviewing a summary judgment. Tex.R.App. P. 47.1 (formerly rule 90(a)). *See Cincinnati Life Ins. Co. v. Cates,* 927 S.W.2d 623, 626 (Tex.1996). The appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy. *Id.*

### Procedural History

Appellees filed their motion for summary judgment asking the trial court to find that: (1) Rush's retainer contract was terminated for cause; (2) the retainer contract was rescinded on March 21, 1994; (3) Rush is estopped from asserting any rights for compensation under the retainer contract; (4) performance under the retainer contract was impossible; and (5) the retainer contract is void. Appellees' motion for summary judgment concluded with a prayer that their motion for summary judgment be granted and that Rush's counter-claim for attorneys' fees be denied.

Rush responded and appellees replied to Rush's response to their motion for summary judgment. The trial court granted interlocutory partial summary judgment finding that Rush was "terminated for cause" without specifying any particular causes. The partial summary judgment further dismissed with prejudice Rush's counterclaims for contractual attorneys' fees, tortious interference with a contractual relationship, failure to supervise, and payment of a thing not due. The judgment further ordered the parties to mediate Rush's remaining attorneys' fees claims.

Thereafter, appellees filed a motion for clarification of the trial court's partial summary judgment, asking the court which issues were disposed of by the trial court's partial summary judgment, which issues will be litigated by the jury, and which issues will be determined by the trial court. Rush responded, asking that appellants' motion for clarification be denied and asking that they be permitted to introduce evidence in support of Rush's claim that he committed no breach of ethics and that he was entitled to attorneys' fees under Louisiana law. Other than a docket entry, there is no order in the record indicating what action the trial court may have taken on this motion and response. As indicated under the first issue, we cannot consider docket entries. *See State Farm Fire & Cas. Co. v. Reed,* 826 S.W.2d at 661.

Finally, Rush filed a motion for new trial asking that the trial court reconsider its granting of the partial interlocutory judgment, set that judgment aside, and enter a new interlocutory judgment denying appellants' motion for summary judgment. The trial court entered a written order denying the motion for new trial "after hearing the oral argument of all parties and reviewing the pleadings and exhibits attached" to the motion and response. Because the trial court exercised its discretion and considered all the new evidence attached to the motion to reconsider, or motion for new trial, we will consider all the evidence attached to these motions in connection with this issue.

 A trial court has the inherent authority to change or modify any interlocutory order or judgment until the judgment becomes final. *See H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 876–877 (Tex.App.—Corpus Christi 1996, writ denied). A trial court may, in the exercise of discretion, properly grant summary judgment after having previously denied summary judgment without a motion by or prior notice to the parties, as long as the court retains jurisdiction over the case.

*Id.* We conclude that the trial court had jurisdiction over this case, had authority to reconsider its previous ruling, and had authority to consider the other evidence attached to these motions. *Id.*

### The Summary Judgment Evidence

**1. No evidence of conflict.** In their first subpoint in issue two, Rush contends there was no summary judgment evidence to establish a conflict. Appellees' motion for summary judgment contained referrals to the deposition of Melvin Barrios, quoting at length the various parts that supported their motion that Rush had been terminated for cause. The deposition was not attached to appellees' motion but was attached to Rush's response. Rule 166a(c) provides: "The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response ... show ... the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response." Therefore, the trial court properly considered Barrios's deposition attached to Rush's response ·in rendering judgment. *See Wilson v. Burford,* 904 S.W.2d 628, 629 (Tex. 1995).

**a. Barrios's deposition.** Barrios testified that his employer, Knight Oil Tools, "assigned" Rush to his ERISA claim. Mike Hamza, the vice president of Knight Oil Tools, told Barrios that he asked the company lawyer, Rush, to see why he wasn't covered for 90 days instead of 30 days for his treatment at TIRR. Barrios left TIRR after 80 days, owing it a large sum of money. Barrios stated that every time he asked Rush to file suit on his medical claim, Rush told him that he was "working on it" and asked Barrios to "hold off" filing suit. Barrios stated that Rush

represented Knight Oil Tools and would have to sue them to recover under the ERISA plan. He stated that Aaron Guidry, his new attorney, told him this. Mr. Guidry eventually settled the ERISA claim for what Barrios owed in medical expenses.

Barrios stated that Rush and Knight Oil Tools were giving him the "runaround." Initially, Barrios was reluctant to file suit against Central and Whirlwind. Barrios stated that Rush advised him of his potential claim, and that Rush was "the one that convinced" him. Barrios asked Rush to file suit, and stated that he would not have filed suit had Rush not convinced him. Barrios stated that he didn't hire Rush to handle his ERISA claim and that Mike Hamza hired Rush to "look into it." He stated that Rush was not representing him on his ERISA case when he signed the contingency fee contract on the claim against Whirlwind and Central (the "products case"). He further indicated he signed the contract with Rush on the products case because he wasn't physically able to "hunt for a lawyer." After he signed the contract with Rush, Barrios went to Guidry and asked Guidry to represent him in the ERISA case. Rush called Barrios in December 1993 and told him that Calogero, Rush's son-in-law and member of Rush's firm, was handling his file. Barrios stated that when he took Rush's file to Guidry, he had not hired Guidry at that point. Guidry told Barrios that there was a problem with the lawsuit filed against Whirlwind in the Louisiana court, that Barrios had only two months until the two-year statute of limitations expired in Texas, and that Barrios had to do something. Barrios then· told Guidry to draw up the March 3, 1994 letter to Rush terminating his services. Barrios stated that his reasons for firing Rush were: (1) Rush would not sue the insurance company on his ERISA claim because Rush would have to

sue Knight Oil Tools, and Rush "was trying to keep away from that;" (2) Rush would not call Barrios back on either his ERISA claim or his products claim; and (3) Whirlwind was improperly named in the Louisiana products suit. Barrios further testified that he was very upset with Calogero and with Rush in the way they handled his claims. He stated that his "business was better off with Aaron Guidry than with Pete Rush and his associates."

**b. ERISA Plan.** Attached to appellees' reply to Rush's response to appellees' motion for summary judgment were: (1) the Employee Benefits Plan for Knight Oil Tools, Inc. (the ERISA plan), and (2) a Certified Copy of the Louisiana Secretary of State's Domestic Corporation Annual Report for the period ending September 2, 1993, which indicated that Rush was the Registered Agent for Knight Oil Tools.

The ERISA plan stated that the employer was the Plan Administrator, and further named Knight Oil Tools as the employer. The plan further provided that the Plan Supervisor was Employee Benefit Services, Inc., which was "the firm providing administrative and consulting services to the Employer in connection with the operation of the Plan and performing such other functions, including processing and payment of claims, as may be delegated to it." Appellees asked that the affidavit of Michael Hamza, attached to Rush's response, which stated that Knight Oil Tools was never the plan administrator for the ERISA plan be stricken as false. We find no ruling on this request by the trial court.

There is a great deal of argument in the briefs by both parties as to whether Rush had a conflict of interest because he represented Knight Oil Tools (Knight), and as such representative, he would represent Knight in any case filed against the ERISA plan because Knight was the plan

administrator and an indispensable party. Appellees contend that Rush's interests were adverse to Barrios's interests because Rush could not represent Knight as a defendant and Barrios as the plaintiff in the same ERISA suit. Appellees assert that Rush was therefore in violation of rule 1.7 of the Rules of Professional Conduct for Louisiana attorneys. Rule 1.7 provides:

Loyalty is an essential element in the lawyer's relationship to a client. Therefore:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) The lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) Each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) The lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

With his first motion for new trial/motion for reconsideration of the summary judgment, Rush added the Administrative Services Agreement between Knight and Employee Benefit Services, Inc. (EBS) whereby Rush contends that all fiduciary responsibilities under the plan were trans-

ferred to EBS. Rush argued that it had no discretionary authority to administer the plan and therefore was not a necessary party to any suit that Barrios might have against the plan.

Appellees point out that the agreement again names the employer as Plan Administrator, and "employer" means Knight Oil Tools. The "Plan Sponsor" is the Employer, which as Plan Administrator, has final responsibility for any and all payments made under Plan Document. The "Plan Supervisor" means Employee Benefit Services, Inc. Appellees point out that the agreement clearly provides:

> As to its obligations under the Plan and under this Agreement, Plan Administrator [Knight Oil Tools] shall have the *discretionary authority in performing all duties required of it by ERISA* or by the terms of this Agreement, or both (emphasis added).

Both parties cite various cases in support to support their respective contentions. Appellees assert that under ERISA, Knight Oil Tools was an indispensable party, and Rush asserts that Knight assigned all its rights and duties as plan administrator to EBS. The United States Court of Appeals for the Sixth Circuit has specifically held that the employer is not a proper party defendant in an ERISA action concerning benefits unless its control over administration of the plan is demonstrated. *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir.1988), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 52 (1988).

In his deposition, Guidry stated he filed suit in the Louisiana State Court against Knight Oil Tools and EBS, for negligent misrepresentation by them in the administering of the ERISA plan. Guidry felt that by bringing this action under state law, ERISA would not pre-empt the lawsuit. He did not give the details of the

suit, nor the disposition of it. He stated that "they" settled for $52,000.00. We do not know who "they" is. Guidry did not state what attorney represented Knight in the state lawsuit. Accordingly, we cannot determine if Knight Oil Tools would or would not have been a proper party to an ERISA suit on the plan in federal court. For us to hold that Rush had a conflict of interest on the grounds that he could possibly be faced with a conflict if an ERISA suit was filed, would be speculation. The trial court's summary judgment did not state Rush was terminated for conflict of interest; it stated only that Rush was terminated for *cause.*

We have only Barrios's testimony that he became very upset over the way Rush was handling his medical claim. His anxiety was in part created by his knowledge that Rush was Knight's attorney, and he knew that Rush couldn't sue them in any lawsuit for his medical claim. He asserts that Rush did nothing on his medical claim or products claim, was uncommunicative by not returning Barrios's telephone calls, and almost caused a prescription problem by filing suit against Whirlwind under an improper name.

In his affidavit attached to his response to appellees' motion for summary judgment, Rush asserts: (1) he was retained by Barrios to pursue health insurance benefits against North American Life and Casualty Company and EBS; (2) during Rush's retainer, Barrios never requested Rush to file any lawsuit; (3) Rush returned all Barrios's telephone calls; and (4) Central and Whirlwind were "solidarily liable" to Barrios under Louisiana law and "interruption of prescription as to Central properly served to interrupt prescription as to Whirlwind." Absent from Rush's affidavit are any denials or explanations concerning Barrios's allegations of adverse interests from Rush's dual representation

of Knight and Barrios on Barrios's medical claim under Knight's ERISA policy. Rush's only reference to the conflict of interest was:

Also, the misinformation given by GUIDRY to MELVIN BARRIOS concerning my alleged conflict of interest and the fact that BARRIOS' Louisiana lawsuit was allegedly prescribed, was in violation of the Louisiana Supreme Court Rules of Profession Conduct, Rule 7.2(c).

In a similar Louisiana case involving an attorney conflict of interest and termination for cause, the Court of Appeal of Louisiana, Fourth Circuit, found that, under the facts of that case, it was "not prepared to say that Rule 1.7 [cited above in this opinion; conflict of interest rule] was violated by Cashio's continued representation of both Osborne and his wife in the personal injury suit." *See Osborne v. Vulcan Foundry, Inc.*, 699 So.2d 492, 496 (La.App. 4 Cir. 9/3/97), *aff'd,* 709 So.2d 723 (La.2/06/98). In that case, Osborne retained Cashio in 1986 to prosecute a personal injury claim for damages in an work-related injury. Osborne and his wife separated and Cashio continued to represent her on her loss of consortium claim. The only reason Osborne fired Cashio was because he did not want Cashio representing both him and his wife. *Id.* Osborne further testified that he had a "pretty vicious divorce," and asked Cashio how he could represent both him and his wife. Cashio told him, "Don't worry about it, I can handle it." Osborne stated "he felt uncomfortable with that situation," and he later confirmed he had questions about Cashio's trustworthiness because Cashio insisted on continuing to represent both him and his wife in the personal injury suit. *Id.* Osborne turned his personal injury suit over to another lawyer, Caluda. Caluda settled the suit for $810,000.00, generating a $324,000.00 contingency fee. The trial court found that Osborne had discharged Cashio for "cause" and that the work Cashio had performed only entitled him to a $75,000.00 share, or 23%, of the contingency fee. On appeal, the court of appeal applied the *Saucier* factors and the *O'Rourke* holding because Cashio had been discharged for cause. *Id.* at 494.

Because the evidence showed that Cashio had done a great deal of work from 1986 thru 1994, the court of appeal reversed the trial court and awarded him 50% of the fee reduced by the ten percent "discharge-for-cause penalty" required by *O'Rourke. Id.* at 497.

Pertinent to this case, the *Osborne* court stated:

It is true that the wife's claim for loss of consortium was interconnected with Osborne's suit and her recovery was largely dependent upon Osborne's successful recovery; the parties' interests were not adverse to each other. Therefore, under the facts of this case, we are not prepared to say that Rule 1.7 was violated by Cashio's continued representation of both Osborne and his wife in the personal injury suit. Nevertheless, a finding of discharge for cause does not depend upon a finding that the Rules of Professional Conduct were violated. *See O'Rourke v. Cairns, supra.* This is not the case of a client unschooled in law trying to direct his attorney in the prosecution of his case. This is a case of an attorney causing this client, already under a great deal of stress, additional and unnecessary stress. Under the circumstances presented in this case, we cannot say the trial court was manifestly erroneous in finding that Thomas Osborne had just cause to discharge Cashio.

*Osborne,* 699 So.2d at 497.

There can be no doubt that Rush caused Barrios, "already under a great deal of

stress, additional and unnecessary stress." *Id.* In his affidavit, Rush did not attempt to deny or explain Barrios's contentions of dual representation. The only evidence Rush produced concerned Knight's ERISA plan and his contentions that he would not be violating rule 1.7 because Knight assigned all its discretionary duties to EBS. In *Osborne,* the Louisiana court of appeals held that a finding of discharge for cause does not depend upon a finding that the Rules of Professional Conduct were violated. *Id.* at 497.

Rush defends his position on the improper name of Whirlwind in the Louisiana suit on his theory that prescription would not apply because Whirlwind and Central were joint tortfeasors and thus "solidarily liable." This assertion is only a legal opinion, and whether this would be the case if suit was brought in the Louisiana courts on this theory is unknown. Accordingly, this assertion does not create a material fact issue. *See Ramirez v. Transcontinental Ins. Co.,* 881 S.W.2d 818, 829 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (affidavit of attorney stating that workers' compensation carrier had no reasonable basis for denying claim was legal conclusion and incompetent summary judgment proof).

Finally, Rush claimed Barrios's statements that Rush never returned his telephone calls were false. Rush claimed he returned all of Barrios's calls. This is a self-serving statement of an interested witness of what he knew and intended. Such statements are not susceptible of being readily controverted and are not competent summary judgment proof. Tex.R. Civ. P. 166a(c); *McKnight v. Riddle & Brown, P.C.,* 877 S.W.2d 59, 62 & n. 4 (Tex.App.—Tyler 1994, writ denied).

 In this case, the trial court applied Louisiana law to the admissible evidence. The record is not sufficiently developed by either party to this case to support a finding that Rush was terminated or not terminated by reason of a conflict of interest. The trial court's ruling was that Rush was terminated for *cause,* not for conflict of interest. As was the case in *Osborne,* "a finding of discharge for cause does not depend upon a finding that the Rules of Professional Conduct were violated." *Osborne,* 699 So.2d 492. We find there was no competent summary judgment proof to controvert Barrios's complaints of lack of communication and unnecessary stress and worry caused by Rush's handling of his ERISA claim and of his products claim. As was the case in *Osborne,* "this is a case of an attorney causing his client already under a great deal of stress, additional and unnecessary stress." *Osborne,* 699 So.2d at 497. Accordingly, we hold the trial court correctly granted summary judgment for appellees by finding that Barrios discharged Rush for cause. *Id.* The evidence was insufficient to support a finding for or against termination because of conflict of evidence. We sustain Rush's contention in his second issue that there was no summary judgment evidence to establish a conflict of interest. We overrule Rush's contention in his second issue that the trial court erred in entering summary judgment that Rush was terminated for cause.

**2. Waiver of alleged conflict.** In his second subpoint to his second issue, Rush contends that Barrios knew Rush was working for Knight, and therefore he consented to the dual representation. He further asserts that the contingency fee contract contained a provision whereby Barrios "specifically excludes services by ATTORNEY herein to insurance coverage available to Knight Oil Tools, Inc., and CLIENT agrees and stipulates that he/they have retained another firm/attorney to handle those claims." In his brief,

Rush asserts this "proves that Barrios knew that he had two separate claims and that Rush would not represent him in any claim regarding insurance coverage." Rush cites no authority for these conclusory arguments and has not preserved them for appeal. Tex.R.App. P. 38.1(h); *See Patton v. Saint Joseph's Hosp.*, 887 S.W.2d 233, 246 (Tex.App.—Fort Worth 1994, writ denied). We overrule this subpoint to issue two.

**▆▆▆ 3. Appellees' summary judgment proof not timely filed.** Rush contends appellees' summary judgment proof attached to their reply to his response was untimely because it was not filed until three days prior to the hearing on the summary judgment. Rush made no objection in the record to the "late filing" of this summary judgment proof. Rush has not properly preserved this alleged error for appellate review since there is no record of the appellant's objection to the consideration of this evidence. Tex.R.App. P. 33.1; *Knapp v. Eppright*, 783 S.W.2d 293, 296 (Tex.App.—Houston [14th Dist.] 1989, no writ). We overrule Rush's subpoint of error to issue three contending that appellees' summary judgment proof was not timely filed.

**4. The summary judgment evidence raised a material fact issue.** We have found that the evidence is insufficient to uphold a finding or nonfinding of conflict of interest. We held under our discussion of Rush's subpoint one, above, that the trial court did not err in granting summary judgment that Rush was terminated for cause (uncommunicative and failure to pursue Barrios's claims with diligence). O'Rourke's attorney was dismissed for cause for making "little effort in communicating with" O'Rourke, and this, "in conjunction with the numerous occasions in which Belsome [O'Rourke's discharged attorney] conveyed to the client that he was unsure how to proceed with the case, led the client to lose faith in Belsome." *O'Rourke*, 683 So.2d at 704. Similarly, the evidence that Rush was uncommunicative, refused to file suit in the ERISA case, filed the case against Whirlwind under an improper name, and made Barrios very upset, was not refuted by competent summary judgment proof. We overrule Rush's subpoint four in issue two contending that he raised a material fact issue as to his termination for cause.

## PERSONAL JURISDICTION OVER RUSH

In issue three, Rush contends the trial court did not have personal jurisdiction over him, and the trial court erred in denying Rush's special appearance motion contesting the trial court's jurisdiction.

Mr. and Mrs. Barrios filed their products liability suit against Whirlwind in Cause No. 94–15688, in the 80th District Court in Harris County, Texas. Rush filed a plea in intervention in this suit seeking one-third of any amounts awarded Barrios. Rush subsequently dismissed his plea in intervention "without prejudice." Barrios's suit was settled for $2,000,000.00, and appellees then sued Rush in this declaratory judgment action to determine what attorney's fees were to be awarded to the various attorneys that represented Barrios in this suit.

**▆▆▆▆▆** Rush waived any objection to personal jurisdiction by filing a plea in intervention in underlying suit. Rather than pursue his claim to his portion of the fees in the underlying suit, Rush withdrew his plea. Rush did not enter a special appearance in the underlying suit, but waited until this declaratory judgment was filed to file a special appearance. Rule 120a of the Texas Rules of Civil Procedure provides that a party may challenge *in personam* jurisdiction by means of a spe-

cial appearance. A "special appearance shall be made by sworn motion filed *prior to motion to transfer venue or any other plea, pleading or motion.*" TEX.R. CIV. P. 120a(1) (emphasis added). The defendant must comply with the strictures of Rule 120a; otherwise, the defendant will be making a general appearance. *Clements v. Barnes,* 822 S.W.2d 658, 659 (Tex. App.—Corpus Christi 1991), *rev'd on other grounds,* 834 S.W.2d 45 (1992); *Slater v. Metro Nissan of Montclair,* 801 S.W.2d 253, 254 (Tex.App.—Fort Worth 1990, no writ).

Moreover, when a party seeks to invoke the judgment of the court on any issue other than jurisdiction, a general appearance is made. *Clements,* 822 S.W.2d at 659; *Letersky v. Letersky,* 820 S.W.2d 12, 13 (Tex.App.—Eastland 1991, no writ). A plea in intervention seeks to invoke the authority of the court. *Serna v. Webster,* 908 S.W.2d 487, 492 (Tex.App.—San Antonio 1995, no writ). Discharged attorneys who intervened and appeared before the court on a motion to determine attorney fees in personal injury suit were parties before court for all purposes. *Id.*

In *Liberty Enters, Inc. v. Moore Transp. Co.,* the Texas Supreme Court found where the defendant had stated in its motion for new trial, " 'Liberty is ready to try this case when it is properly set for trial,' " the defendant had affirmatively submitted to the court's jurisdiction. 690 S.W.2d 570, 571–72 (Tex.1985). By filing his plea in intervention and dismissing it without prejudice to "reinstate their claim at a later date," we hold that appellants have waived their jurisdictional claim by making a general appearance in the underlying suit against Central and Whirlwind.

Appellees brought this suit under the Texas Declaratory Judgments Act, TEX. CIV. PRAC. & REM.CODE ANN. § 37.002 (Vernon 1997 & Supp.2000). The Declaratory Judgments Act is a procedural device for deciding cases that are within the court's jurisdiction. *State v. Morales,* 869 S.W.2d 941, 947 (Tex.1994); *Lane v. Baxter Healthcare Corp.,* 905 S.W.2d 39, 41 (Tex. App.—Houston [1st Dist.] 1995, no writ).

The purpose of a declaratory action is to establish existing rights, status, or other legal relation. *Bonham State Bank v. Beadle,* 907 S.W.2d 465, 467 (Tex. 1995); *Republic Ins. Co. v. Davis,* 856 S.W.2d 158, 164 (Tex.1993). The Declaratory Judgments Act is "remedial" only. *Bonham State Bank,* 907 S.W.2d at 467.

The Act does not confer additional substantive rights upon parties, nor does it confer additional jurisdiction on courts. *Lane,* 905 S.W.2d at 41. A declaratory judgment is appropriate only if there is a justiciable controversy about the rights and status of the parties and the declaration will resolve the controversy. *Bonham State Bank,* 907 S.W.2d at 467; *Lane,* 905 S.W.2d at 41.

Whether a court has subject matter jurisdiction to hear an action for declaratory judgment depends upon whether the underlying controversy falls within the constitutional and statutory jurisdiction of that court. "The provisions of [the Act] authorizing the bringing of suit for a declaratory judgment, do not in any way change the law as to jurisdiction of Texas Courts." *Connor v. Collins,* 378 S.W.2d 133, 134 (Tex.Civ.App.—San Antonio 1964, writ dism'd).

The 80th District Court in Harris County, Texas, had subject matter jurisdiction over the underlying controversy [the products suit & Rush's plea in intervention for attorneys' fees pursuant to his contingency fee contract] because the amount in controversy was within the jurisdictional limits of the court. The trial court had personal jurisdiction over Rush

because Rush intervened in that case making him a party. Accordingly, the 80th District Court had subject matter jurisdiction over a declaratory judgment action seeking a determination of the parties' rights to attorney's fees generated by underlying products case pursuant to the contingency fee contracts of Rush and Guidry. TEX. CIV. PRAC. & REM.CODE ANN. § 37.004; *see Kadish v. Pennington Assoc., L.P.,* 948 S.W.2d 301, 303 (Tex.App.—Houston [1st Dist.] 1995, no writ); *Great Am. Ins. Co. v. Sharpstown State Bank,* 422 S.W.2d 787, 789 (Tex.Civ.App.—Austin 1968, writ dism'd) (declaratory judgment was proper to resolve issue of validity of surety agreement). We hold the trial court had personal jurisdiction over Rush and subject matter jurisdiction over the controversy in this declaratory judgment action.

■ Rush further contends the trial court erred in overruling his special appearance motion under rule 120a, Texas Code of Civil Procedure. Although the trial court conducted a hearing on the matter, we have no reporter's record of the hearing, no findings of fact, no conclusions of law, and no order granting or overruling Rush's motion. Again, we cannot consider docket entries as a substituted for a written ruling. By not obtaining a ruling from the trial court on his special appearance motion, Rush has not preserved any complaints arising from this motion and hearing. TEX.R.APP. P. 33.1; *see McDermott v. Cronin,* 31 S.W.3d 617, 623 (Tex.App.—Houston [1st Dist.] 2000, no pet.). We overrule Rush's contentions in issue three that the trial court erred in denying his special appearance motion.

We affirm the judgment of the trial court.