**Affirmed and Memorandum Opinion filed January 18, 2018.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-16-00580-CV

**KAREN WAKEFIELD, Appellant**

**V.**

**BANK OF AMERICA, N.A. AND FEDERAL NATIONAL MORTGAGE ASSOCIATION, Appellees**

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2013-05157A**

## M E M O R A N D U M   O P I N I O N

Karen Wakefield sued Bank of America, N.A. and Federal National Mortgage Association ("the lenders"), among others, for fraud, breach of fiduciary duty, and other claims relating to her purchase of real property. The lenders moved for summary judgment based on the statute of limitations, among other grounds. The trial court granted the motion and severed Wakefield's claims against the lenders

from her claims against the other defendants, resulting in a final judgment. We affirm.

## I.    BACKGROUND

In October 2005, Wakefield purchased real property located at 1812 Marshall Street, Houston, Texas, 77098. She had been living at the property for several years and purchased the property from her then-landlord, Alan Mundy. At the time, Mundy lived at 1825 Marshall Street.

The sales price was $437,750. Wakefield financed the purchase by obtaining several loans from Countrywide Home Loans, which later merged with Bank of America. She signed several notes and deeds of trust to secure financing for the purchase. Ultimately, Bank of America became the owner and holder of the first-lien promissory note and deed of trust.

In December 2006, Wakefield and her then-boyfriend also purchased 1825 Marshall Street from Mundy, and the couple began residing at 1825 Marshall Street while she leased 1812 Marshall Street to tenants. In April 2011, Wakefield and her former boyfriend sold 1825 Marshall Street, and Wakefield moved back to 1812 Marshall Street. While packing up at 1825 Marshall Street, Wakefield found closing documents related the purchase of 1812 Marshall Street. She testified by affidavit that she "did not fully realize that a potential fraud had been perpetrated until [she] found the closing documents for 1812 in the garage at 1825 in April 2011."

On appeal, Wakefield summarizes her reasons for suspecting fraud:

Upon review of the 1812 closing documents, it became clear to Appellant that there was something wrong with the closing on her home at 1812. The discrepancies that were readily apparent included (a) the real estate earnest money contract transposed the addresses for the seller/buyer showed [sic] Appellant's primary residence to be 1825 and MUNDY's primary residence to be 1812; (b) the Uniform Residential

2

Loan Application showed the incorrect birth date for Appellant; (c) the HUD-1 Settlement Statement had the addresses transposed showing Appellant's primary residence to be 1825 and MUNDY's primary residence to be 1812; [and] (d) the survey was wholly incorrect; showing the property as a two-story structure when it is a one-story structure, Marshall Street running in an incorrect direction, and the survey appears to be a mirror image of the property at 1825 which is a completely different house.

Wakefield alleged in her petition that she believed "something nefarious had occurred regarding the purchase" of 1812 Marshall Street. After April 2012, Wakefield stopped paying her mortgage because she believed that continuing to make payments would "perpetuate a fraud." In September 2012, Bank of America foreclosed on the property.

In January 2013, Wakefield sued the lenders and others for breach of fiduciary duty, fraud, and other claims. She pleaded the discovery rule for each claim. Regarding the substance of her claims, she contended that the lenders "went along for the ride" of fraud initiated by Mundy. She sought to hold the lenders liable for lending her money to buy the house at a "highly inflated sales price." She pleaded that the lenders owed her a fiduciary duty to assure that she was "purchasing the property at fair market value."[1]

The lenders filed a hybrid motion for summary judgment on all of Wakefield's claims. In relevant part, the lenders argued that the statute of limitations barred all of Wakefield's claims and that the discovery rule did not apply because the basis of her claims would have been readily apparent if she had exercised ordinary diligence

---

[1] The summary-judgment record includes an affidavit from an appraiser, Malcom Willey. He testified that he utilized comparable sales during the time period relative to October 2005 and determined that the fair market value of the property as of that time period was $332,000.

3

to inspect the closing documents. The lenders also contended that there was no evidence that they owed Wakefield a fiduciary duty.

Wakefield objected to much of the lenders' evidence, and the trial court sustained the objections and denied the motion for summary judgment in a single order. But, the trial court granted the lenders' motion for reconsideration in its entirety, set aside the prior order, and thereafter granted the lenders' motion for summary judgment without making another ruling on the objections. The trial court severed Wakefield's claims against the lenders, and Wakefield appeals from the final judgment.

## II. ISSUES AND ANALYSIS

In two issues, Wakefield contends that the trial court (1) improperly granted the lenders' motion for summary judgment and (2) improperly granted the lenders' motion on reconsideration because the trial court previously sustained Wakefield's objections to the lenders' summary-judgment evidence. The lenders contend that the trial court properly granted summary judgment on each of Wakefield's claims for multiple reasons, including that her claims were barred by the statute of limitations.

First, we hold that Wakefield's second issue is inadequately briefed. Then, we affirm summary judgment as to several of Wakefield's claims because she does not challenge all bases for the trial court's judgment on those claims. Finally, we hold that the trial court did not err by granting summary judgment on the remaining claims based on the statute of limitations.

## A. Reconsideration

Wakefield contends that the trial court erred by granting summary judgment on reconsideration because the lenders "did not provide any admissible summary judgment evidence supporting their traditional motion for summary judgment."

The trial court set aside its prior order in which the trial court had sustained Wakefield's objections and denied summary judgment. Wakefield cites no authority to suggest that a trial court may not change or modify an interlocutory order sustaining objections to summary judgment evidence and denying a summary judgment. Wakefield does not cite to any authority other than the general rule that summary-judgment evidence must be admissible. Wakefiled provides no analysis and cites to no authority concerning why any of the lenders' evidence was inadmissible. Thus, Wakefield's brief does not "contain a clear and concise argument for the contentions made, with appropriate citations to authorities." Tex. R. App. P. 38.1(i).

Furthermore, we note that a "trial court has the inherent authority to change or modify any interlocutory order or judgment until the judgment becomes final." *Rush v. Barrios*, 56 S.W.3d 88, 98 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). "A trial court may, in the exercise of discretion, properly grant summary judgment after having previously denied summary judgment without a motion by or prior notice to the parties, as long as the court retains jurisdiction over the case." *Id.*

Wakefield has not made a clear or concise argument for why this principle should not apply in this case. Because her second issue is inadequately briefed, we overrule it. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 338 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

**B.  Summary Judgment on Claims with Unchallenged Grounds**

If an appellant fails to challenge all grounds on which a summary judgment may have been granted, the appellate court must uphold the summary judgment. *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 653 (Tex. App.—Houston [14th Dist.] 2013, no pet.). "This rule applies to particular claims disposed by summary judgment." *Cmty. Mgmt., LLC v. Cutten Dev., L.P.*,

5

No. 14-14-00854-CV, 2016 WL 3554704, at *3 (Tex. App.—Houston [14th Dist.] June 28, 2016, pet. denied) (mem. op.); *see also DeWolf v. Kohler*, 452 S.W.3d 373, 389 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (affirming summary judgment on one of several claims because the appellant did "not challenge all of the independent grounds on which summary judgment on this claim may have been granted"); *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 875 (Tex. App.—Dallas 2005, no pet.) ("[A] reviewing court will affirm the summary judgment as to a particular claim if an appellant does not present argument challenging all grounds on which the summary judgment could have been granted.").

In their motion for summary judgment, the lenders sought summary judgment for reasons other than the statute of limitations on Wakefield's claims for statutory fraud, alleged violations of the Deceptive Trade Practices–Consumer Protection Act (DTPA), conspiracy, negligent misrepresentation, and claim to quiet title. On appeal, Wakefield does challenges the propriety of the summary judgment on these claims only on the limitations ground. We must affirm summary judgment on these claims because the summary judgment could have been rendered on these claims "properly or improperly" based on the unchallenged grounds. *See Ellis v. Precision Engine Rebuilders, Inc.*, 68 S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (affirming summary judgment on a DTPA claim when there were two grounds in the motion on this claim, and the appellant challenged only the limitations ground on appeal). Accordingly, we affirm the trial court's judgment in favor of the lenders on Wakefield's claims of statutory fraud, alleged DTPA violations, conspiracy, negligent misrepresentation, and claim to quiet title.

## C. Summary Judgment on Statute of Limitations

In the motion for summary judgment, the lenders argued that the statute of limitations barred Wakefield's claims for breach of fiduciary duty and common law

fraud because Wakefield's claims accrued at the time of closing on 1812 Marshall Street in October 2005, and she did not sue until more than four years later in January 2013. The lenders also argued that the discovery rule did not benefit Wakefield because her claims were based on documents that she executed at the closing and that were publicly recorded. Wakefield contends that she did not actually discover any fraud until April 2011, when she found the closing documents. She contends the documents were "well-hidden and not discoverable."

### 1. Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.*

For a traditional summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). A defendant who conclusively establishes an affirmative defense is entitled to summary judgment. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

When, as here, the trial court does not specify the grounds for its summary judgment, we must affirm if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co., v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### 2. General Principles for Limitations and Discovery Rule

The limitations period for fraud and breach of fiduciary duty is four years. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(4)–(5). "As a general rule, a cause of

action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy." *Knott*, 128 S.W.3d at 221. A cause of action "accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet to occur." *Id.*

There is, however, a "very limited exception" to the general rule for determining accrual of the cause of action. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996). "The discovery rule exception defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action." *Id.* Under the discovery rule, accrual may be deferred if "the nature of the injury incurred is inherently undiscoverable and the evidence of injury is objectively verifiable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006) (quoting *Computer Assocs.*, 918 S.W.2d at 456). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Id.* at 313–14 (quoting *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001)).

The issue of when a cause of action accrues is a question of law. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). And, whether an injury is inherently undiscoverable is a legal question "decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net*, 211 S.W.3d at 314.

When, as here, the plaintiff pleads the discovery rule and the defendant moves for summary judgment on the statute of limitations, the defendant must (1) conclusively prove when the cause of action accrued, and (2) negate the discovery rule by proving as a matter of law that there is no genuine issue of material fact about

when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of her injury. *KPMG Peat Marwick v. Harrison Cty. Housing Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

### 3. *No Fiduciary Relationship, No Presumption of Undiscoverable Injury*

In the context of a fiduciary relationship, "the nature of the injury is presumed to be inherently undiscoverable, although a person owed a fiduciary duty has some responsibility to ascertain when an injury occurs." *Computer Assocs.*, 918 S.W.2d at 456. The rationale for this presumption is that fiduciaries are presumed to possess superior knowledge, meaning the injured party is presumed to possess less information than the fiduciary. *See id.* Consequently, the Supreme Court of Texas has repeatedly "held a fiduciary's misconduct to be inherently undiscoverable." *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996). If a fiduciary relationship exists, "a person to whom a fiduciary duty is owed is relieved of the responsibility of diligent inquiry into the fiduciary's conduct." *Id.*

Because the discovery rule has a varied application in the context of a fiduciary relationship, and Wakefield has alleged a claim for breach of fiduciary duty, in analyzing the discovery-rule issue, we must decide whether the lenders owed Wakefield a fiduciary duty.

Wakefield alleged in her live petition that the lenders "have a fiduciary duty to Plaintiff to assure that she (as lendee) is purchasing the property at a fair market value, that the documents are properly and accurately drawn and submitted, and that the appraisal and survey documents are valid." The lenders moved for summary judgment on Wakefield's claim for breach of fiduciary duty, arguing that Wakefield had no evidence of a fiduciary relationship and, generally, that lenders and borrowers have no fiduciary relationship as a matter of law.

9

Generally, the relationship between a borrower and a lender does not create a fiduciary duty. *Baskin v. Mortgage & Trust, Inc.*, 837 S.W.2d 743, 747 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *see also Farah v. Mafrige & Kormanik, P.C.*, 927 S.W.2d 663, 675 (Tex. App.—Houston [1st Dist.] 1996, no writ). "[T]he great weight of authority is that while the relationship between the mortgagor and mortgagee is often described as one of trust, technically it is not of a fiduciary character." *Lovell v. W. Nat'l Life Ins. Co.*, 754 S.W.2d 298, 303 (Tex. App.—Amarillo 1988, writ denied). "A special relationship does not usually exist between a borrower and lender, and when Texas courts have found one, the findings have rested on extraneous facts and conduct, such as excessive lender control or influence in the borrower's business activities." *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 442 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). Not every relationship involving a high degree of trust and confidence gives rise to an informal fiduciary duty, and for an informal fiduciary duty to arise in a business transaction, "the relationship must exist prior to, and apart from, the agreement made the basis of the suit." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176–77 (Tex. 1997). Wakefield did not allege an informal fiduciary relationship; in her pleadings she based her breach-of-fiduciary-duty claim on her status as "lendee" and did not plead any facts to support the existence of an informal relationship.

The lenders rely on uncontroverted evidence that the lenders' relationship with Wakefield is, at most, a mortgagor–mortgagee relationship, and Wakefield has identified no evidence that might otherwise support the existence of a fiduciary relationship in this case. Thus, we apply the discovery rule without the presumption afforded to a fiduciary relationship.

## 4. Injury from Purchasing Property Above Fair Market Value Not Inherently Undiscoverable

Wakefield alleged in her live pleading that the lenders owed her a duty to ensure that she was purchasing 1812 Marshall Street at a fair market value. She alleged that Bank of America failed to investigate Mundy's fraud, which allegedly resulted in Wakefield paying an artificially inflated price. To adduce some evidence of her alleged injury, she responded to the motion for summary judgment with an affidavit from an appraiser who testified that he utilized comparable sales during the time period relative to October 2005 and determined that the fair market value of the property as of that time period was $332,000. Furthermore, Wakefield clarifies on appeal that the "documents at issue giving rise to a claim" by Wakefield included: "Real Estate Earnest Money Contract, HUD-1 Settlement Statement, Survey, [and] Residential Loan Application." She contends that the "discrepancies" in these closing documents were "readily apparent."

Wakefield contends that her injury is that she paid too much for the 1812 Property because the sales price was about $100,000 more than the fair market value. As a contracting party not in a fiduciary relationship, due diligence required that Wakefield protect her own interests. *See Via Net*, 211 S.W.3d at 314. Wakefield, as purchaser of the property, was a participant in the closing. By failing to ask for relevant closing documents, Wakefield did not exercise due diligence. *See id.* (holding that a failure to ask for information needed to verify contractual performance was not due diligence).

And, nothing prevents a buyer of property from obtaining an independent appraisal based on comparable sales, as Wakefield ultimately did. *Cf. Horwood*, 58 S.W.3d at 736–37 (holding that the discovery rule did not apply to royalty owners' claims that the lease operator deducted improper charges because there were several

sources of non-publicly available information that would have allowed the owners to discover the propriety of the charges; noting that one of the owners ultimately hired a consultant who determined the owner had been overcharged); *Bruning v. Hollowell*, No. 05-13-01033-CV, 2015 WL 1291378, at *4–5 (Tex. App.—Dallas Mar. 23, 2015, pet. denied) (mem. op.) (holding that summary judgment on statute of limitations was proper in a suit where the buyer alleged that the lender's appraisal was inaccurate and caused the buyer to overpay for property; noting that inaccuracies in appraisal could have been discovered from publicly available information about the property). Had Wakefield exercised reasonable diligence, she would have discovered the facts giving rise to her claims at, before, or shortly after closing on the 1812 Property. This type of injury—paying more than fair market value for real property due to "readily apparent" inaccuracies in closing documents—is not inherently undiscoverable.

The lenders conclusively established that Wakefield's claims for breach of fiduciary duty and fraud accrued in October 2005, that her suit in January 2013 was outside the limitations period, and that the discovery rule did not apply. Thus, the trial court did not err by granting summary judgment based on the statute of limitations.

## III. CONCLUSION

Wakefield's issues are overruled. We affirm the trial court's judgment.

/s/    Ken Wise
        Justice

Panel consists of Chief Justice Frost and Justices Donovan and Wise.