In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-13-00508-CV

ELTON SENEGAL D/B/A ELTON'S CONSTRUCTION, Appellant

V.

SHIRLEY PAYNE AND JAMES PAYNE, Appellees

**On Appeal from the 172nd District Court**
**Jefferson County, Texas**
**Trial Cause No. E-191,964-A**

## MEMORANDUM OPINION

In a case arising from a dispute over a home remodeling project, Elton Senegal, d/b/a Elton's Construction, appeals from a judgment notwithstanding the verdict (JNOV) awarding the plaintiffs $70,000, approximately twice the amount of the jury's award. According to Elton, the evidence supports the jury's award, and the trial court erred by disregarding it.

Because the evidence on damages that was before the jury allowed it to rationally return a verdict awarding the Paynes $36,000 in damages, we hold the

1

trial court erred in disregarding the jury's verdict. We reverse the trial court's JNOV, and we remand the case to the trial court to allow that court to render a judgment that is based on the jury's verdict. Tex. R. App. P. 43.3(a).

Background

In October 2011, Elton and Shirley Payne signed a remodeling contract. The contract required Elton to substantially remodel the Paynes' home, and required Elton to tear down and replace an existing garage with a three-car garage and carport. Due to the nature of the contract, the contract provided that any work required due to "unforeseen damages" could result in an additional charge.

Although the contract generally describes the work, it does not specify the quality or grade of materials that Elton planned to use on the project or the dimensions of the areas to be remodeled. The parties do not dispute that the remodeling contract required Shirley to pay $116,000 for the work. Under the contract, Elton was to receive an initial down payment, and he was then to draw against the balance of the contract as the project progressed. In November 2011, Shirley signed a change order, increasing Elton's compensation under the contract by $2,100 to $118,100.

Between October 2011 and November 2011, Elton demolished various structures, poured cement, and made significant progress toward the remodeling of the Paynes' home. In early December 2011, Shirley was sent a new contract, which

proposed to complete the work at a total cost of $197,800. In Shirley's opinion, Elton was required to perform all of the work in the proposed new contract under the terms of his October 2011 contract. Elton testified that he could not remember if he sent Shirley a new contract proposal or not, but shortly after Shirley failed to return the new proposal, Elton quit the project. Before Elton quit, Shirley paid him $81,366 for his work.

In late December 2011, the Paynes requested that Elton submit the dispute to arbitration through the Better Business Bureau. In early January 2012, Elton agreed to arbitration, and the dispute was arbitrated. In a reasoned decision, the arbitrator found that Elton breached the remodeling contract and awarded relief in favor of the Paynes, requiring Elton to "honor [his] original bid of $116,000 and complete the work in accordance with the original contract . . . on or before 6/30/2012." The arbitrator's award also required that the Paynes, upon completion, pay Elton $34,634, the balance due under his original contract.

Several weeks after the arbitrator notified the parties of his award, the Paynes' attorney sent Elton a letter threatening suit. The letter to Elton alleges that Elton breached the arbitrator's award; it demands that Elton begin work within ten days. Elton did not return to the project to complete it.

In mid-February 2012, the Paynes' attorney obtained a bid from Grady Rucker, a contractor, to finish the project for $88,343. During the trial, Rucker

testified that he used the blueprints that Elton used in preparing his bid. Additionally, Rucker indicated that he planned to incorporate any construction materials that were still onsite to complete the project; however, Rucker indicated that the Paynes did not hire him.

Moises Castillo, a carpenter who had been working on the project for Elton before Elton quit, gave Shirley another bid to complete Elton's contract. Castillo bid $70,600 to complete Elton's work. Castillo testified that Shirley hired him, and that she paid him $70,000. However, Castillo testified that he was unable to complete the project because he ran out of money.

Before the trial, the Paynes filed a motion for partial summary judgment. In the motion, the Paynes alleged that Elton was bound by the arbitrator's finding that Elton breached his remodeling contract. The trial court granted the motion, rendered a partial summary judgment, and found that Elton breached the contract. However, the partial summary judgment did not resolve the parties' disputes about whether some of Elton's work allowed him to charge the Paynes additional sums to compensate for correcting "unforeseen damages." The partial summary judgment also did not resolve the reasonable sum required to compensate the Paynes due to Elton's breach.

The parties tried the dispute to a jury in October 2013. During the trial, Elton suggested that he found termite damage after he started the project, which required

4

extra work. During the trial, Elton claimed that he had not foreseen the termite damage when he bid the project, and he claimed that repairing termite damage was beyond the scope of the work required by his contract.[1]

## Standard of Review

In one issue, Elton contends the trial court erred by disregarding the jury's award of damages. Generally, a trial court must render a judgment based on the jury's verdict in a case; a trial court is authorized to grant a motion to disregard a jury's verdict only if a directed verdict on the issue would have been proper. Tex. R. Civ. P. 301; *Fort Bend Cnty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 394 (Tex. 1991). When a trial court's decision to disregard a jury's verdict is challenged on appeal, we review the challenge using the same standard that we use to review a challenge to a trial court's decision to grant a directed verdict. *Rush v. Barrios*, 56 S.W.3d 88, 94 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Under that standard, to justify the trial court's decision to disregard the jury's verdict in this case, the record must conclusively establish that the jury could reach only one decision on the amount the Paynes were damaged, and that no reasonable

---

[1]While Elton's trial testimony contradicts a prior statement that he made when the case was arbitrated about why his expenses for the project increased, the statement that he made during the arbitration to explain the increase was not before the jury. Because Elton's prior statement explaining why he could not complete the project was not before the jury, we do not consider it in evaluating if there was legally sufficient evidence before the jury to explain the jury's damage award.

factfinder would conclude on this record that the Paynes were damaged in any amount other than $70,000. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *In re Estate of Longron*, 211 S.W.3d 434, 438 (Tex. App.—Beaumont 2006, pet. denied).

Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In evaluating the evidence's legal sufficiency, we review the entire record and "credit evidence that supports the verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 (Tex. 2006) (citing *City of Keller*, 168 S.W.3d at 827); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 114 (Tex. App.—Beaumont 2005, pet. denied).

Unless the evidence before the jury conclusively established the fact that the Paynes were damaged and the amount of their damages, the trial court could not grant a directed verdict on the issue of damages.[2] *See City of Keller*, 168 S.W.3d at 810 (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362-63 (1960)). Generally, when the amount of what would be reasonable is disputed, a court is not authorized to substitute its

---

[2]The fact that Elton breached the contract is not challenged on appeal, as Elton has not challenged the trial court's ruling that he failed to perform the agreement.

judgment and replace the jury's assessment of the amount of money necessary to reasonably compensate the plaintiffs for their injuries. *See Pope v. Moore*, 711 S.W.2d 622, 623-24 (Tex. 1986) (explaining that an issue complaining about the amount the jury awarded requires the appeals court to resolve a factual dispute, and holding that the matter should not have been reviewed under a legal sufficiency standard).

When the evidence presents a range of possible damage awards, "an award within that range is an appropriate exercise of the jury's discretion, and a reviewing court is not permitted to speculate on how the jury actually arrived at its award." *Drury Sw., Inc. v. Louie Ledeaux #1, Inc.*, 350 S.W.3d 287, 292 (Tex. App.—San Antonio 2011, pet. denied); *see also Pilgrim's Pride Corp. v. Mansfield*, No. 09-13-00518-CV, 2015 WL 794908, at \*9 (Tex. App.—Beaumont Feb. 26, 2015, no pet.). While a court is generally not permitted to substitute its judgment for that of the jury when the damages are disputed, a trial court may grant a new trial if a jury's damage award is "manifestly too small or too large." Tex. R. Civ. P. 320. In this case, none of the parties asked the trial court to grant a new trial. Instead, the trial court substituted its judgment on damages for that of the jury by rendering a judgment notwithstanding the jury's verdict.

At the conclusion of the trial, the trial court submitted an issue to the jury asking it to decide the "amount of money, if any, you find that would be required

7

to complete the agreed construction on the Payne[s'] home." When the defendant does not object to the charge, challenges that concern the sufficiency of the evidence to support the jury's finding are reviewed on appeal using the charge the jury considered; the evaluation of the sufficiency of the evidence is not reviewed based on a hypothetically correct charge.[3] *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

In reviewing the evidence that the jury considered, we assume that the jury resolved all conflicts in accordance with its verdict, as it was within the jury's province to resolve any conflicts that existed in the evidence. *See City of Keller*, 168 S.W.3d at 820. Under a legal sufficiency review, "[t]he final test for legal

---

[3]Elton did not object to the damage issue. After the jury began deliberating, it sent the trial court a question, asking the court to clarify whether the term "agreed construction" in the charge meant the construction in the original contract or something else. In response, the trial court advised the jury that "there is only the original contract." The measure of damages the jury was required to apply in deciding an appropriate award is not challenged, but by deciding the case on the issue the jury decided, we do not intend to imply that the jury was instructed properly on the measure of damages. *See Vance v. My Apartment Steak House of San Antonio, Inc.*, 677 S.W.2d 480, 482 (Tex. 1984) (explaining that where only part of the contract price has been paid, the amount of the owner's damages should be subtracted from the unpaid balance of the contract); *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.*, 642 S.W.2d 160, 164 (Tex. 1982) (explaining that a difference-in-value measure of damages, which applies when a contract has not been substantially performed, and a remedial measure of damages, which applies when the contract is performed, must both be reduced by any unpaid portion of the contract price).

sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id*. at 827.

Analysis

According to the Paynes, the record contains no evidence supporting the jury's award of $36,000. However, evidence admitted during the trial includes several opinions that established a range of possible damages awards. Elton testified as follows:

> [Question] Would you have been able to finish that job for the $36,000 that was owed to you?
>
> [Senegal] Actually the job, with the contract, yes, I would be able to finish the job. But the additional - - when we tore the house down, we ran into a bunch of problems when we tore some of the house down. I'm not trying to be funny, but the only thing that was holding that house together was two termites holding hands because it was terrible when we opened up the walls.

Although Elton also testified during the trial that it would cost around $50,000 to $60,000 to complete everything in the contract, it is not clear whether his higher estimate included any repairs that he performed due to termites, items that he claimed were unforeseen and, subject to an additional charge. The jury was entitled to resolve the conflicts in Elton's testimony, and it could have reasonably inferred that Elton's higher estimate was based on the assumption that his higher estimate included additional work not included in his original contract.

In evaluating the amount that would reasonably be required to complete the work, the jury also was entitled to consider Moises Castillo's testimony and his bid. Castillo bid $70,600 to complete Elton's contract. The evidence indicates that Castillo was awarded the job to complete the work, but he then failed to complete it. During the trial, Castillo was not asked to state whether his bid included repairs to any termite damage or any other unforeseen items that were outside the scope of the work described by Elton's contract. Castillo was also not questioned regarding whether his bid included the same quality and grade of materials on which Elton's contract was based. Additionally, Castillo was also not asked whether he saw any termite damage while working on the project. Regardless of the way the jury reconciled the conflicts in the testimony, "the judgments and inferences of experts or skilled witnesses, even when uncontroverted, are not conclusive on the jury or trier of fact, unless the subject is one for experts or skilled witnesses alone[.]" *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986).

Under Texas law, the general rule is that "opinion testimony does not establish any material fact as a matter of law." *Id*. In other words, none of the various opinions that the jury considered in reaching its verdict were binding on the jury. *See City of Keller*, 168 S.W.3d at 815-16 (explaining that "[e]vidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case"). "Most often, undisputed contrary evidence

becomes conclusive (and thus cannot be disregarded) when it concerns physical facts that cannot be denied." *Id*. at 815. The dispute in this case does not involve physical facts; instead, the dispute concerns opinions that concern the cost involved to complete the remodeling of the Paynes' home. Castillo's opinion on the cost to complete Elton's contract did not conclusively establish the reasonable cost of completing the project. *McGalliard,*722 S.W.2d at 697.

Grady Rucker also testified during the trial regarding the estimate that he gave to the attorney for the Paynes. According to Rucker, $88,343 was the reasonable cost required to complete the project. Rucker's opinion, like Castillo's, was not conclusive proof on the issue. *See id*. Here, the evidence indicates that Rucker was hired by the attorney for the Paynes to estimate the cost required to complete the remodeling that Elton started. Rucker was never asked whether his bid included repairing any termite damage, or whether he saw any evidence of termites when he inspected the Paynes' home. Finally, with respect to the quality and grade of materials to be used on the project, it is not clear from the testimony that Rucker's bid was based on the same assumptions that Elton used in determining the contract price.

In summary, the testimony established a range of potential reasonable awards from $36,000 to $88,343, and the evidence did not conclusively establish

that a reasonable award was $70,000. We sustain Elton's issue, and we conclude the trial court erred by substituting its judgment for that of the jury.

The Paynes have not filed a cross-point in the appeal. Tex. R. App. P. 38.2(b). However, because the trial court granted the Paynes' motion for JNOV without first entering a judgment on the jury's verdict in a form that is capable of execution, rendering a judgment on the jury's verdict is a matter that we leave to the trial court on remand. Tex. R. App. P. 43.3(a). Therefore, we set aside the trial court's JNOV, and we remand the case to the trial court for the sole purpose of entering a final judgment that is consistent with the jury's verdict.

REVERSED AND REMANDED.

_____
HOLLIS HORTON
Justice

Submitted on October 28, 2014
Opinion Delivered July 2, 2015

Before McKeithen, C.J., Horton and Johnson, JJ.